**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JEFFREY M. COHEN,**

                              **Plaintiff,**

        **v.**                                                **5:19-CV-274**
                                                               **(TJM/TWD)**

**ROGER L. ALTMAN, and ROSA ALTMAN,**

                              **Defendants.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**


## DECISION & ORDER

        Before the Court are Defendants' appeal of the order of Magistrate Judge Thérèsè

Wiley Dancks, dkt. # 137, and Plaintiff's motion for summary judgment, dkt. # 131.  The

parties have briefed the issues and the Court will decide the matters without oral

argument.

## I.    BACKGROUND

        This case concerns a financial relationship between Plaintiff Jeffrey M. Cohen and

Defendants Roger and Rosa Altman.  Defendants represent themselves _pro se_.  Plaintiff

alleges that Defendants purported to serve as financial advisors and investors and

operators of "investment clubs."  Plaintiff alleges that Defendants provided him with false

and fraudulent statements about his investments and misappropriated retirement funds

Plaintiff had entrusted to them.  He also alleges that Defendants breached promises to

him that they would repay him the money they held for him.  He alleges that Defendants

hold at least $164,641.95 that he is due.  Plaintiff's Amended Complaint raises counts of embezzlement, conversion, breach of contract and bad-faith breach of contract, fraud, and breach of fiduciary duty.  See dkt. # 52.  The Complaint seeks actual damages of $164,641.95 and $1 million in punitive damages.

This case has been rife with discovery disputes, with Defendants refusing to provide paper discovery and resisting depositions until faced with a court order. Defendants have asserted a Fifth Amendment right to refuse to supply discovery documents and asserted their right against self-incrimination in refusing to answer most questions during their depositions.   On November 12, 2020, Plaintiff filed a motion seeking an order that directed Defendants to produce documents, answer interrogatories, sit for depositions, and produce other material.  See dkt. # 118.  Magistrate Judge Thérèsè Wiley Dancks issued an order granting that request in part and denying the request in part on June 4, 2021.  See dkt. # 132.  Defendants' appeal addresses that order.  Before Judge Dancks issued her order addressing these discovery issues, Plaintiff filed the instant summary judgment motion.

The parties have briefed the issues raised by the motions, and the Court will address them in turn.

## II.    LEGAL STANDARDS

### A.  Appeal of Magistrate Judge's Non-Dispositive Order

A district court judge reviewing a magistrate judge's non-dispositive pretrial order, as is in issue here, may not modify or set aside any part of that order unless it is clearly erroneous or contrary to law.  Labarge v. Chase Manhattan Bank, N.A., 1997 U.S.

Dist. LEXIS 13803, 1997 WL 5853122, at *1 (N.D.N.Y. Sept. 3, 1997) (citing 28 U.S.C. §

636(b)(1)); FED. R. CIV. P. 72(a); Mathias v. Jacobs, 167 F.Supp.2d 606, 621-23 (S.D.N.Y.

2001); Dubnoff v. Goldstein, 385 F.2d 717, 721 (2d Cir. 1967) (court's decision "not to

disqualify himself is ordinarily reviewable only upon appeal from a final decision on the

cause in which the application . . . was filed.").  Findings are clearly erroneous when the

reviewing court is firmly convinced the lower court decided an issue in error.  Lanzo v. City

of New York, 1999 U.S. Dist. LEXIS 16569, 1999 WL 1007346, *2-3 (E.D.N.Y. Sept. 21,

1999).  This standard imposes a heavy burden on the objecting party, and only permits

reversal where the district court determines the magistrate judge "abused [her] broad

discretion[.]"  Labarge, 1997 U.S. Dist. LEXIS 13803, 1997 WL 583122 at *1.

> **B.    Summary Judgment**

Plaintiff moves for summary judgment.  It is well settled that on a motion for

summary judgment, the Court must construe the evidence in the light most favorable to

the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and

may grant summary judgment only where "there is no genuine issue as to any material

fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P.

56(a).  An issue is genuine if the relevant evidence is such that a reasonable jury could

return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 248

(1986).

A party seeking summary judgment bears the burden of informing the court of the

basis for the motion and of identifying those portions of the record that the moving party

believes demonstrate the absence of a genuine issue of material fact as to a dispositive

issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to

establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

## III.   ANALYSIS

The Court will address each motion in turn.

### A.   Appeal of Magistrate Judge's Opinion

Judge Dancks's order addressed discovery disputes.  See dkt. # 132.   The order granted in part and denied in part a motion from Plaintiff seeking discovery.  See dkt. # 118.  Plaintiff sought an order from the court that directed "(i) production of documents; (ii) answers to interrogatories; (iii) reconvening defendants' depositions; (iv) production of electronic media and things identified by defendants['] rule 26 disclosure; and (v) recoupment of plaintiff's costs, attorney's fees and travel and lodging expenses for (1) the instant motion"; as well as the costs of depositions where Defendants did not attend or did not provide responsive answers.  Id. at 1-2.  Defendants responded by arguing that they had timely invoked their Fifth Amendment rights and were therefore not compelled to comply with the outstanding discovery requests.  See dkt. # 121.  Plaintiff responded by pointing out that Plaintiffs had failed to object to similar demands for production of tax

4

documents in another case in which they were involved, which he contended further undermined any assertion of the Fifth Amendment privilege in this case.  See dkt. # 125 at 3.

Judge Dancks's decision notes that "Defendants oppose the motion and have raised the Fifth Amendment privilege against self-incrimination apparently as an explanation for failing to provide the requested discovery."  Dkt. # 132 at 1.  Defendants did not, however, argue that the discovery Plaintiff sought was "irrelevant, burdensome, or out of proportion to the needs of the case."  Id.  The demands in question sought information about "bank accounts, tax returns, and other financial information related to Plaintiff's claims.  Id.  While Defendants initially failed to respond to any requests,  they eventually responded after a court order, but only "in a conclusory and blanket manner," where they "asserted their Fifth Amendment rights against self-incrimination to avoid providing" the requested discovery.  Id. at 2.  In addition, Plaintiffs asserted their Fifth Amendment rights at their deposition.  Id.  Judge Dancks noted that "[n]o criminal actions are pending against Defendants."  Id.

Judge Dancks relates that Plaintiff served interrogatories on the Defendants, requested documents, noticed depositions, and demanded documents be produced at the depositions.  Id. at 6.  Though Defendants did not object to the depositions or the document requests, but they did not appear for the depositions.  Id.  Defendants also failed to respond to Plaintiff's discovery requests "in a timely fashion."  Id.  Judge Dancks concluded that "Defendants simply ignored their discovery obligations" and issued orders for Defendants to respond to discovery demands and sit for depositions.  Id.  "Once Defendants did respond to Plaintiff's discovery demands and appear for their depositions,

5

they belatedly raised the Fifth Amendment privilege," Judge Dancks finds.  Id.  Judge

Dancks rejects Defendants' claim that they raised the Fifth Amendment privilege "in their

third answer to the amended complaint," noting that the undersigned struck that answer

and that the "operative pleading" contains no such privilege claim.  Id.

Because of these delays in responding to discovery requests and delays in

asserting the privilege, Judge Dancks "finds Defendants waived their Fifth Amendment

privilege."  Id.  In addition, she also concludes that Defendants failed to provide any

explanation for why answering the discovery requests and deposition questions would

cause Defendants a "danger of self-incrimination."  Id.  Rather than explaining why

answering discovery and deposition questions could incriminate them, "Defendants simply

assert the privilege in a conclusory fashion."  Id. at 7.  Examining the discovery requests

and document requests, Judge Dancks could not divine "any readily apparent

incriminatory nature that could be attributed to the answers."  Id.  She also noted that no

present criminal case against the Defendants exists.  Id.  Judge Dancks therefore ordered

the Defendants to produce the documents in the discovery requests, including copies of

tax returns for the years requested.  Id.  Judge Dancks did not order that Defendants sit

again for depositions, however, since Plaintiff had neglected to include copies of

deposition transcripts in his filing.  Id.  Evaluating those depositions was not possible

without such transcripts.  Id. at 7-8.  Judge Dancks also denied attorneys fees and costs

"in view of Defendants' pro se status."  Id. at 8.

Defendants appeal this decision.  They contend that they have sufficiently asserted

their Fifth Amendment rights.  Explaining why they must assert the privilege would

undermine the right itself; the causes of action for breach of fiduciary duty, fraud, and

embezzlement which Plaintiff asserts require them to address issues that could lead to criminal liability.  Even though Defendants are not the subject of a current criminal case, they assert they may still assert the privilege out of a fear that information they provide could be used against them in a future prosecution.  Defendants also dispute that they did not seek the privilege in a timely fashion.  They contend that their privilege claim was timely because they asserted the privilege after Judge Dancks ordered them to participate in discovery:  "the Defendants, by following the Courts' demands by August 31, 2020, were given a ***second opportunity*** to respond to discovery."  Defendants' Brief, dkt. # 137, at 4 (emphasis in original).  Defendants assert that their response to that order was timely, and thus their assertion of privilege was also timely.

Defendants thus argue that Judge Dancks erred in finding they waived any claim to the Fifth Amendment privilege and failed to articulate a sufficient basis for why the privilege applied to Plaintiff's discovery requests and to their depositions.  The Court will address each argument in turn, mindful that the question here is whether Judge Dancks's findings are clearly erroneous or contrary to law.

At issue here is whether Judge Dancks properly determined that Plaintiff's had not asserted a Fifth Amendment right sufficient to avoid responding to discovery requests.  An individual may assert a Fifth Amendment "privilege against self-incrimination in a civil proceeding."  United States v. 4003-4005 5th Ave., 55 F.3d 78, 82 (2d Cir. 1995).  "[A] civil litigant may legitimately use the Fifth Amendment to avoid having to answer inquiries during any phase of the discovery process."  Id.  A successful invocation of the Fifth Amendment right prevents "discovery of privileged matters[.]"  Id.  A party faced with the use of the privilege will "often have no recourse in the civil litigation other than to comment

7

upon the claim of privilege in the hope of persuading the trier of fact to draw a negative inference." Id. at 82-83.  At the same time, a party who invokes the privilege "is not 'freed from adducing proof in support of a burden which would otherwise have been his[.]'" Id. at 83 (quoting Untied States v. Rylander, 460 U.S. 752, 758 (1983)).  Such a party faces "'the consequence of lack of evidence,' and the claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation." Id. (quoting United States v. Taylor, 975 F.2d 402, 404 (7ᵗʰ Cir. 1992)).

In civil cases, courts must recognize that "*all* parties–those who invoke the Fifth Amendment and those who oppose them–should be afforded every opportunity to litigate a civil case fully." Id. at 84 (emphasis in original).  Thus, "if there is a timely request made to the court, the court should explore all possible measures in order to 'select that means which 'strikes a fair balance . . . and . . . accommodates both parties.'" Id.  (quoting United States v. United States Currency, 626 F.3d 11, 16 (6ᵗʰ Cir. 1980)).  Courts must "give due consideration to the nature of the proceeding, how and when the privilege was invoked, and the potential for harm or prejudice to the opposing parties." Id.  At the same time, courts also must recognize that the privilege can be "an effective way to hinder discovery and provides a convenient method for obstructing a proceeding[.]" Id.  Courts "must be especially alert to the danger that the litigant might have invoked the privilege primarily to abuse, manipulate, or gain an unfair strategic advantage over opposing parties." Id. Abuse of the privilege can lead a court to "adopt remedial measures or impose sanctions." Id. at 84-85.

"The Fifth Amendment privilege is not self-executing; if not invoked it may be

deemed to have been waived, including by litigation conduct short of a 'knowing and intelligent waiver.'" DG Creditor Corp. v. Dabah (In re DG Aquisition Corp.), 151 F.3d 75, 80 (2d Cir. 1998) (quoting Garner v. Untied States, 424 U.S. 648, 654 n.9 (1976) (internal citation omitted)).  A party seeking to use the privilege must invoke it "in a timely fashion." Roberts v. United States, 445 U.S. 552, 559 (1980).   "However, waiver of such a fundamental right 'is not lightly to be inferred.'" DG Creditor Corp., 151 F.3d at 80 (quoting Emspak v. United States, 349 U.S. 190, 196 (1955).  A court "'must indulge every reasonable presumption against waiver.'" Id. (quoting United States v. O'Henry's Film Works, Inc., 598 F.2d 313, 318-19 (2d Cir. 1979)).

A party may invoke the Fifth Amendment "whenever" that person "reasonably believes that his testimony could 'furnish a link in the chain of evidence needed to prosecute' him for a crime." Estate of Fisher v. Comm'r, 905 F.2d 645, 648 (2d Cir. 1990) (quoting Hoffman v. United States, 341 U.S. 479, 486 (1951)).  The mere invocation of the privilege, however, does not relieve a party from an obligation to answer a question or discovery request.  Id.  "[T]he court" in the end "decides whether a witness' refusal to answer is privileged." Id.  The privilege applies when "it [is] evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.'" Id. at 648-49.  Still, "[t]he danger of self-incrimination must be real, not remote or speculative."  Id. at 649.  If "the danger is not readily apparent from the implications of the question asked or the circumstances surrounding the inquiry, the burden of establishing its existence rests on the person claiming the privilege." Id.

The Court finds that Judge Dancks's finding that Defendants could not invoke the

9

Fifth Amendment privilege to resist discovery requests was not clearly erroneous or contrary to law and will dismiss the appeal.  Defendants did not assert the Fifth Amendment to resist discovery until long after the discovery process began, and then only when the Court ordered them to stop ignoring discovery requests.  Their assertion of the Fifth Amendment came at a point that the assertion served mostly to frustrate the discovery process.  Finding that the assertion came to complicate the litigation and frustrate Plaintiff's claims is not unreasonable, much less clearly erroneous.  Moreover, the Court finds no error in Judge Danck's conclusion that Defendants' invocation fo the privilege was merely conclusory and not justified by any legitimate fear of potential criminal liability.  Indeed, Defendants' explanation that they asserted the privilege in part because Plaintiff had raised claims of breach of fiduciary duty, fraud, and embezzlement could be read as an admission that they asserted the privilege because the information requested in discovery might harm their defense on the civil claims.  The Fifth Amendment is not a shield to civil liability.

### B.    Summary Judgment Motion

Plaintiff sought summary judgment even before Judge Dancks delivered her opinion on whether Defendants needed to answer Plaintiff's discovery requests.  The Court will first address the factual issues raised by the motion and then analyze the legal issues.

### i.    Factual Background

Plaintiff alleges that Defendants have held money belonging to him since the first quarter of 2018.  Plaintiff's Statement of Material Facts ("Plaintiff's Statement"), dkt. # 131-

10

8, at ¶ 1.  Plaintiff contends that Defendants hold $164,641.95 of his money, "despite demand and" Defendants' "written promises to disgorge."  Id.  They refuse to pay Plaintiff the money he contends they owe him.  Id.  Plaintiff further alleges that, despite Defendants' multiple answers and refusals to participate in discovery, they have "submitted to the Court signed statements that conclusively admit the operative facts asserted in the Amended Complaint."  Id. at ¶¶ 2-3 (¶ 3 citing to dkt. # 89, Defendants' Amended Answers to Amended Complaint with Affirmative Defenses as the source of these admissions).

Defendant Roger L. Altman promised to "repay" Plaintiff the money Defendants owed him.  Id. at ¶ 4.  Defendants respond that "[b]efore and after this lawsuit began, Defendants have admitted all along that they owe Plaintiff $164,641.95, but deny they have ever refused to return those funds to the Plaintiff."  Defendants' Response to Affirmation of Ronald Cohen ("Defendants' Response"), dkt. # 134, at ¶ 4 (emphasis in original).[1]  While Defendants admit that they promised to return these funds to the Plaintiff, they explain that "before the Plaintiff's lawsuit commenced, and during the time periods

---

[1]Defendants filed a response to the affirmation of Plaintiff's Attorney, Ronald Cohen, rather than a response to Plaintiff's Statement of Material Facts.  Most of their response addresses the Fifth Amendment issue discussed above.  Defendants appear to have misunderstood to which document they were to respond with citations to the record. They title their response as "Defendants Local Rule 56.1 Statement," which indicates their desire to respond.  The Local Rules provide that "[t]he Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  L.R. 56.1(b) (emphasis in original).  Based on this Rule, the Court could find all properly supported facts in the Plaintiff's statement admitted. Defendants technically did not respond to any of the paragraphs in Plaintiff's statement. Defendants proceed pro se, however, and consideration for that status causes the Court to consider Defendants' attempted response where appropriate.  As will become apparent, Defendants offer material admissions that they Court must consider, even if addressed to the wrong document.

11

these funds were requested, it was impractical or impossible to return the Plaintiff's funds due to a very severe medical emergency." Id.  Altman's answer to the Amended Complaint admitted that "'Defendants' [sic] [made a] commitment to repay plaintiff." Plaintiff's Statement at ¶ 4 (citing to Defendants' Amended Answers, dkt. # 85, at ¶ 7). Roger Altman wrote Plaintiff on May 13, 2018, stating that "'the delay in sending all of your funds [is] I had to put them in a private placement interest bearing vehicle to keep them out of the hands of my former attorneys[.]'" Id. at ¶ 5.  Defendants "deny that their written and oral statements demonstrate that they ever refused to return Plaintiff's funds, but were unable to do so for medical reasons."  Defendants' Response at ¶ 5.

Defendant Rosa Altman sent Plaintiff an e-mail on July 10, 2018 that a payment scheduled to be provided on July 31, 2018 would take place in August 2018.  Plaintiff's Statement at ¶ 6.  Defendants still have Plaintiff's money and have acknowledged that they do.  Id. at ¶¶ 7-8.  Indeed, Defendants explain that:

Defendants admit (a) that Defendants have Plaintiff's money; (b) that they promised to return that money and (c) they have not returned that money because . . .

(1)    they were unable to do so at the time the funds were requested due to impracticalities or impossibilities related to surgeries and physical therapy in Rochester, NY, required medical attention in Virginia from August 2018 through June of 2019 [see Exhibits 1-3]; all of which were supervised by their physician daughter.  Thus, the Defendants were prevented from returning to New York State to arrange for the return of Plaintiff's funds.

(2)    Since Plaintiff has accused Defendants of a number of felonies and misdemeanors, in addition to $1,000,000 in punitive damages, Defendants have sought to rely on their Constitutional right not to be a witness against themselves, and therefore ask the Plaintiff to provide evidence that such a defense is unlawful.  Memorandum of law provides many settled case law decisions in favor of the Defendants.

Defendants' Response at ¶ 13 (emphasis and elipsis in original).

Plaintiff contends that Defendants admitted their intention to perform on the agreement to return the funds "by promising part performance in August 2018."  Plaintiff's Statement at ¶ 10.  Despite Plaintiff's demands for payment, Defendants have refused to "disgorge Plaintiff's money[.]"  Id. at ¶ 11.

Plaintiff contends that, by sending Plaintiff an e-mail on February 11, 2018 that sought to explain his failure to make payment to Plaintiff, Defendant Roger Altman admitted that he held funds in his own name that he promised to pay the Plaintiff.  Id. at ¶ 12.  Altman stated that "'[a]s for the reason for the delay in sending you all your funds . . . I had to move those funds into a private placement-interest bearing [sic] vehicle[.]'"  Id. at ¶ 13.  Plaintiff contends that this admission indicates that Altman, and not an "alleged investment club," held the money in question.  Id.

Plaintiff points to other correspondence and admissions by the Defendants which he contends provide evidence that Defendants acknowledge a "personal indebtedness" from Defendants to Plaintiff.  Id. at ¶¶ 14-15.  Plaintiff alleges that Defendants statements show that they "removed Plaintiff's funds from the purported investment clubs and individually" took that "money[.]"  Id. at ¶ 16.  Defendants claimed to have invested the money elsewhere.  Id.  Plaintiff alleges that this conduct demonstrates conversion and embezzlement.  Id.  Plaintiff contends that these admissions show that Defendants "acknowledge their criminality."  Id. at ¶ 17.

While Defendants deny that they engaged in any criminal behavior and insist that the Fifth Amendment right against self-incrimination excuses their refusal to participate in discovery or answer questions at their depositions, they make the following admissions:

17.  The Defendants admit that their intention at the time was the release of

13

Plaintiff's funds, but were unable to do so shortly after this statement was
communicated to the Plaintiff due to impracticalities or impossibilities from
unexpected surgeries in Roger Altman's right and left legs.  In addition, Defendants
deny they used . . . the 5th Amendment to evade testifying.  Rather the record
shows that the Plaintiff had accused the Defendants of <u>breach of fiduciary duty,
fraud, and embezzlement, which are all criminal offenses.  As a result the
Defendants exercised their Constitutional right not to testify against themselves with
regards to discovery.</u>
18.  Defendants admit that they promised to pay the money owed to the Plaintiff.
19.  Defendants admit that they had and [sic] control over Plaintiff's money and
were committed to return it as soon as Defendant, Roger Altman could return to
New York State.

Defendant's Response at ¶¶ 17-19.

      **ii.**    **Analysis**

Plaintiff argues that he is entitled to judgment on his claims.  He points to

Defendants' answer to his Amended Complaint, wherein they admit that they are obliged

to pay Plaintiff the amount alleged in the Amended Complaint.  Defendants have admitted,

he contends, that they "agreed to perform but it was impossible or impractical."  Plaintiff

notes that Defendants have not provided discovery responses based on their assertion of

Fifth Amendment rights, but argues that their silence is not an absolute shield to liability.

Plaintiff does not address any of the particular claims raised in his Amended Complaint or

explain exactly how the evidence establishes liability for them.  Instead, he simply seeks

judgment for damages in the sum of $164,641.95, as well as punitive damages of

$1,000,000.[2]  He does not explain why he is entitled to punitive damages, or why $1

---

    [2]The Court notes that the Plaintiff's briefing falls far short of the standard expected
by professionals practicing in this District.  Plaintiff's counsel filed an Amended Complaint
that raised a number of different legal claims and causes of action.  Despite this, his brief
cites to no case law that explains the elements of his claims.  The brief also does not
argue for judgment on any particular claim, and offers no case law that defines punitive
damages or explains why he is entitled to such damages in this particular case.  A brief
should clearly define the issues for the Court and argue for the outcome the party that files

million in an appropriate amount for such damages.

Defendants' memorandum of law contains long quotations from practice guides and arguments regarding their Fifth Amendment right not to testify or participate in discovery. They do not directly address Plaintiff's claim that they promised to pay a sum to him and then breached that promise.  Defendants do, however, point out that Ronald Cohen faced a serious illness that limited his ability to act.  Making all the inferences required in a *pro se* pleading, the Court interprets Defendants' argument to be that their failure to perform is excused because of impossibility or impracticality.

As a preliminary matter, the Court finds that the Defendants' assertion of the Fifth Amendment privilege is not a shield to liability in this matter if the evidence before the Court establishes that Plaintiff, as a matter of law, is entitled to judgment on any of his claims.  As explained, a party who invokes the Fifth Amendment faces "'the consequence of lack of evidence,' and the claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation." 4003-4005 5th Ave., 55 F.3d at 83 (quoting Taylor, 975 F.2d at 404).  Thus, while the Court agrees with Judge Dancks that Defendants may not invoke the Fifth Amendment in this matter and must respond to Plaintiff's discovery requests, the Court may also consider whether summary judgment would be appropriate if

―――――――――――――――

the brief seeks.  A brief should not force the judge to tease out arguments and legal standards based on vague assertions.  If Defendants had not obviously and repeatedly admitted liability on a particular claim, the Court would be forced to deny the Plaintiff's motion in its entirety with leave to renew.  Doing so would amount to a tremendous waste of judicial resources.  The Court is mystified at how a trained lawyer failed to file a brief that laid out the elements of a contract claim and explained why Defendants' admissions entitled his client to relief.

Defendants had been permitted to assert that right.  In any case, the Court decides this matter on Plaintiff's admissions, not on their failure to provide evidence.

The Plaintiff's briefing, lacking as it is, does appear to argue that he is entitled to summary judgment on his breach-of-contract claim.  He argues that Defendants promised to pay a certain amount and have not fulfilled that promise.  In New York, "[t]he essential elements of a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach."  PFM Packaging Mach. Corp. v. ZMY Food Packing, Inc., 16 N.Y.S. 3d 298, 2015 N.Y. App. Div. LEXIS 6711 at *2 (2d Dept. Sept. 16, 2015).   Defendants' admissions establish all of these elements:  they admit that they promised to pay a sum to the Plaintiff on demand; Plaintiff demanded the sum; Defendants admit that they did not pay that sum; and Plaintiff seeks damages in the amount Defendants promised to pay.  Unless Defendants can provide some defense, they are liable on that claim.

Defendants offer a defense of impossibility or impracticability to this contract claim.  "'Impossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible.  Moreover, the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract.'"  Kolodin v. Valenti, 115 A.D.3d 197, 200 (1st Dept. 2014)(quoting Kel Kim Corp. v. Central Mkts., 70 NY2d 900, 902 (N.Y. 1987)).  "The excuse of impossibility is generally 'limited to the destruction of the means of performance by an act of God, vis major, or by law.'"  Id. (quoting 407 E. 61st Garage v. Savoy Fifth Ave. Corp., 23 N.Y.2d 275, 281 (N.Y. 1968)).  Impossibility, such as

16

that caused by illness or death, can excuse a failure to perform on a personal-services contract.  See Wolfe v. Howes, 20 N.Y. 197, 201-202 (N.Y. 1859).  Similarly, "in contracts in which the performance depends on the continued existence of a given person or thing, a condition is implied that the impossibility of performance, arising from the perishing of the person or thing, shall excuse performance."  Dexter v. Norton, 47 N.Y. 62, 65 (N.Y. 1871) (internal quotation omitted).  "The defense of impossibility or impracticability of performance is 'applied narrowly' such that performance is excused 'only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible' and that 'the impossibility must be produced by an unanticipated event that could not have been foreseen or guarded against in the contract.'"  Matter of Reed Found., Inc. v. Franklin D. Roosevelt Four Freedoms Park, LlC, 108 A.d. 31 1, 7 (1st Dept. 2013) (citing Kel Kim Corp., 70 NY2d at 902).

While the Court is sympathetic to Defendant Roger Altman's illness, such illness does not, as a matter of law, render performance impossible.  The contract in question was an agreement for Defendants to pay a certain sum to the Plaintiff to settle a dispute over an investment.  That contract did not involve personal services or a particular skill that only Roger Altman could perform.  No change in the law makes returning funds to the Plaintiff illegal and therefore impossible.  The only action required to achieve the performance that Defendants had promised would be a bank transfer.  Illness by one of the Defendants would not prevent the other Defendant or the representative of the Defendants to perform that transfer.  To the extent that Defendants rely on impossibility because they lack the funds to satisfy the judgment, impossibility does not apply here either.  The question here is not whether Defendants can satisfy a judgment, but whether

they are liable for one.  As such, the defense of impossibility does not apply in this case, and the Court will grant the motion for summary judgment with respect to Plaintiff's breach-of-contract claim and enter judgment against the Defendants in the amount sought by the Plaintiff.

Plaintiff also seeks punitive damages in this case.  In New York, '[p]unitive damages . . . are awarded to punish a defendant for wanton and reckless or malicious acts and to protect society against similar acts.'"  In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 725 F.3d 65, 127 (2d Cir. 2013) (quoting Rivera v. City of New York, 40 A.D.3d 334, 836 N.Y.S.2d 108, 117 (1st Dept. 2007)).  New York courts have varied in their description of conduct justifying punitive damages "'but, essentially, it is conduct having a high degree of moral culpability which manifests a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.'"  Id. (quoting Home Ins. Co. v. American Home Prods. Corp., 75 N.Y.2d 196, 203, 550 N.E.2d 930, 551 N.Y.S.2d 481 (1990)).  Defendant's "conduct need not be intentionally harmful but may consist of actions which constitute wilful or wanton negligence or recklessness." Id. (internal citations omitted).  A jury may award punitive damages when "the defendant 'acted with actual malice involving intentional wrongdoing' or where such conduct amounted to a 'wanton, willful or reckless disregard of plaintiffs' rights.'"  Id. (quoting Ligo v. Gerould, 244 A.D.2d 852, 665 N.Y.S.2d 223, 224 (4th Dept. 1997)). Punitive damages must serve as a "'socially exemplary remedy'" and are therefore appropriate for conduct "'sufficiently blameworthy' that punishing it 'advance[s] a strong public policy of the state.'" Id. at 128 (quoting Randi A. v. Long Island Surgi-Ctr., 46 A.D.3d 74, 842 N.Y.S.2d 558, 564 (2d Dept. 2007)).

18

Plaintiff here has proved only a breach-of-contract.  "Punitive damages are not recoverable for an ordinary breach of contract as their purpose is not to remedy private wrongs but to vindicate public rights."  Rocanova v. Equitable Life Assur. Soc'y, 83 N.Y.2d 603, 613 (N.Y. 1994).  Punitive damages can be available under certain circumstances for a breach of contract, but "a private party" seeking punitive damages in a contract case "must not only demonstrate egregious tortious conduct by which he or she ws aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally."  Id.  Plaintiff has produced no evidence of such egregious conduct.  He does not argue that he has provided any.  The only conduct before the Court is Defendants' effort to assert their Fifth Amendment rights and their failure to answer questions at depositions.  That conduct is not connected to the breach of contract at issue, but instead to the way that Defendants litigated this case.  While there are remedies for contumacious conduct in this case, Judge Dancks has already determined that Defendants' discovery conduct does not justify monetary sanctions.  Plaintiff did not appeal that decision, and the Court would uphold it in any case.  Defendants were mistaken about the scope of Fifth Amendment protection, but nothing indicates they acted in bad faith when they asserted the Amendment's protection.  As such, the Court will deny the Plaintiff's motion with respect to punitive damages.

The Court recognizes that Defendants have not produced any discovery in this case, and that Defendants did not answer any material questions at their depositions.  The Court has upheld a decision from Judge Dancks that required Defendants to produce requested discovery.  Plaintiff filed his motion for summary judgment before Judge Dancks rendered her decision foreclosing Plaintiff's attempt to rely on the Fifth Amendment.

19

While Plaintiff had admissions from the Defendants that entitled him to judgment, he did not have evidence about their conduct in retaining his money. Such evidence may have revealed conduct that entitled Plaintiff to punitive damages. However unlikely this possibility may be, Defendants' refusal to participate in discovery precluded Plaintiff from developing such evidence.

The Court therefore concludes that Plaintiff should be afforded an opportunity to develop such evidence. The Court notes the high standard for proving punitive damages on a contract claim, and considers Plaintiff's summary judgment briefing to have abandoned any attempt to recover on any claim but a contract claim. The Court will permit Plaintiff to choose whether to try to develop such evidence by obtaining discovery responses from the Defendants. The Court will also permit the Plaintiff to depose the Defendants again. If such depositions occur, any attempt to assert the Fifth Amendment could be considered contumacious and could lead to sanctions. The Court will permit Plaintiff to choose this option, but will also allow the Plaintiff to chose to instead accept summary judgment on his contract claim and actual damages on that claim as his sole remedy.

## IV.   CONCLUSION

For the reasons stated above, the Defendants' appeal of the non-dispositive order of Judge Dacks, dkt. # 137, is hereby **DENIED and DISMISSED**. Plaintiff's motion for summary judgment, dkt. # 131, is hereby **GRANTED IN PART** and **DENIED IN PART** with leave to renew with respect to punitive damages. The motion is **GRANTED** with respect to Plaintiff's breach-of-contract claim. The Court concludes that Plaintiff has abandoned all

other claims raised in the Amended Complaint and the motion is **DENIED** with respect to those other claims.  The motion is **DENIED** with leave to renew only with respect to Plaintiff's claim for punitive damages.

Plaintiff shall inform the Court in writing within **THIRTY DAYS** of the date of this Order if he intends to engage in discovery to determine whether punitive damages are available on his contract claim.  If Plaintiff chooses to seek such damages, Defendants are **ORDERED** to respond to discovery requests regarding such damages.  Defendants may also be deposed on that issue.  If Plaintiff does not inform the Court of an intent to conduct discovery on punitive damages within thirty days, the Clerk of Court shall enter judgment in Plaintiff's favor in the amount of  $164,641.95, plus any applicable interest.

**IT IS SO ORDERED**

**DATED:** February 8, 2022

Thomas J. McAvoy
Senior, U.S. District Judge